■ GALA KAPROV, Respondent, v ROMAN STALINSKY et al., Appellants. [44 NYS3d 123]—

Appeal by the defendants from stated portions of a judgment of the Supreme Court, Kings County (Eric L. Prus, J.), dated September 9, 2014. The judgment, inter alia, made an equitable distribution of the marital assets of Gala Kaprov and Roman Stalinksy, and directed Alla Stalinsky, as the executor of the estate of Boris Stalinsky, to transfer title to a certain Florida apartment to Gala Kaprov.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

Gala Kaprov (hereinafter the wife) and Roman Stalinsky (hereinafter the husband) were married in 1998. The wife commenced an action for divorce and ancillary relief on November 12, 2010.

The main assets of the marriage were a business known as Multi, Inc., held in the name of the husband, a condominium apartment in Manhattan held in the name of the husband (hereinafter the Manhattan apartment), and a Mitchell-Lama cooperative apartment in Brooklyn held in the name of the wife (hereinafter the Brooklyn apartment). Also at issue was a condominium apartment located in Bal Harbor, Florida (hereinafter the Florida apartment). Title to the Florida apartment was held in the name of the husband's father, Boris Stalinsky (hereinafter Boris).

Several days after initiating the action for divorce, the wife commenced an action against Boris to impose a constructive trust on the Florida apartment. The wife alleged in her complaint that in April 2002, the husband provided marital funds to Boris to purchase the apartment and thereafter expended more than $150,000 in marital funds to make improvements on it and paid all of the carrying charges. The complaint alleged that these funds were expended in reliance on a promise that the husband and wife were the true owners of the apartment and that Boris held title to the apartment only for tax purposes. According to the wife, since 2002, the apartment had been used solely by the husband and the wife as a vacation home. However, beginning in April 2010, due to marital difficulties, the husband would no longer allow the wife access to the apartment. He thereafter told her that she would not receive any money from the property. Boris also insisted that the wife had no rights in the apartment. The wife claimed that Boris would be unjustly enriched if he were permitted to retain the property, and she therefore asked the Supreme Court to impose a constructive trust on the apartment and to direct Boris to deed his interest in the apartment to the husband and the wife.

By order dated February 18, 2011, the Supreme Court consolidated for all purposes the divorce action and the action to impose a constructive trust on the Florida apartment. Boris died during the course of the consolidated action. His wife, Alla Stalinsky, as the executor of his estate (hereinafter Alla), was substituted for Boris as a defendant.

In an order of reference dated January 4, 2013, the Supreme Court referred the matter to a Referee to hear and determine the issues of equitable distribution, spousal maintenance,

counsel fees, and the constructive trust. In the same order of reference, an issue related to a special proceeding involving the Manhattan apartment was referred to the Referee to be tried jointly with the consolidated action. The special proceeding is not at issue on this appeal.

The Referee held a hearing, during which the parties stipulated that the Referee would determine the wife's application for counsel fees on written submissions. In her application, the wife sought an award of $377,835.13 in counsel fees pursuant to Domestic Relations Law § 237, in addition to $25,000 that had been previously awarded to her.

The Referee issued a decision, concluding that the evidence adduced at the hearing supported the imposition of a constructive trust on the Florida apartment and that, since the apartment was purchased after the marriage, it was a marital asset subject to equitable distribution. The Referee also decided, inter alia, that the Manhattan apartment, the Brooklyn apartment, Multi, Inc., and two other businesses in which the Referee found the husband to have held an interest, were also marital assets. The Referee decided that the wife was entitled to 70% of the marital assets and awarded her a credit for the husband's wasteful dissipation of marital assets, maintenance in the amount of $3,000 per month for seven years, effective September 1, 2014, and $125,000 in counsel fees. A judgment dated September 9, 2014 incorporated the decision. The husband and Alla appeal from stated portions of the judgment.

Contrary to the husband's contention, the wife presented evidence which established the elements of a constructive trust. " '[A] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him [or her] into a trustee' " (*Simonds v Simonds*, 45 NY2d 233, 241 [1978], quoting *Beatty v Guggenheim Exploration Co.*, 225 NY 380, 386 [1919]). " 'The elements of a constructive trust are (1) a fiduciary or confidential relationship; (2) an express or implied promise; (3) a transfer in reliance on the promise; and (4) unjust enrichment' " (*Ning Xiang Liu v Al Ming Chen*, 133 AD3d 644, 644 [2015], quoting *Diaz v Diaz*, 130 AD3d 560, 561 [2015]; *see Simonds v Simonds*, 45 NY2d at 242; *Sharp v Kosmalski*, 40 NY2d 119, 121 [1976]). "[A]s these elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established" (*Marini v Lombardo*, 79 AD3d 932, 933 [2010]). "Thus, although the elements of a constructive trust must be

proved by clear and convincing evidence (see *Diaz v Diaz*, 130 AD3d at 561), '[t]he constructive trust doctrine is given broad scope to respond to all human implications of a transaction in order to give expression to the conscience of equity and to satisfy the demands of justice' " (*Ning Xiang Liu v Al Ming Chen*, 133 AD3d at 645, quoting *Iwanow v Iwanow*, 39 AD3d 476, 477 [2007]).

Here, evidence adduced at the hearing showed that the wife was related to the husband and Boris through marriage and that Boris allowed the Florida apartment to be used solely by the husband and wife as their vacation home for many years. Therefore, the first element for the imposition of a constructive trust was satisfied (see *Henning v Henning*, 103 AD3d 778, 780 [2013]; *Marini v Lombardo*, 79 AD3d at 933-934; *Reiner v Reiner*, 100 AD2d 872, 874 [1984]). The wife also satisfied the second element by demonstrating the existence of an implied promise that Boris was holding title to the Florida apartment for purposes convenient to the husband and that the apartment belonged to the husband and wife (see *Sharp v Kosmalski*, 40 NY2d at 122 [1976]). She also demonstrated that, in reliance on that implied promise, marital funds were used to purchase the apartment and to make renovations costing more than $150,000 (see *Ning Xiang Liu v Al Ming Chen*, 133 AD3d at 645; *Marini v Lombardo*, 79 AD3d at 934; *Eickler v Pecora*, 12 AD3d 635, 636 [2004]). Furthermore, the wife demonstrated that a constructive trust was necessary " 'to satisfy the demands of justice' " (*Simonds v Simonds*, 45 NY2d at 241, quoting *Latham v Father Divine*, 299 NY 22, 27 [1949]). Therefore, the Referee properly decided that a constructive trust should be imposed on the Florida apartment and that it was a marital asset subject to equitable distribution.

The husband contends that this determination was erroneous as it was largely based upon the testimony of the wife and her friend, who were unworthy of belief. However, " '[t]he credibility determinations of a referee are entitled to deference on appeal, since the referee had the opportunity to see and hear the witnesses' " (*S. Nicolia & Sons Realty Corp. v A.J.A. Concrete Ready Mix, Inc.*, 137 AD3d 994, 995 [2016], quoting *Tihomirovs v Tihomirovs*, 123 AD3d 808, 809 [2014]; see *Contarino v North Shore Univ. Hosp. at Glen Cove*, 13 AD3d 571, 572 [2004]). There is no reason to disturb the Referee's credibility determinations in this case.

The husband's contentions with regard to the equitable distribution of the marital assets also are without merit. In making a determination as to equitable distribution of the

marital assets, the Referee properly considered the statutory factors enumerated in the version of Domestic Relations Law § 236 (B) (5) (d) in effect at the time this action was commenced. Contrary to the husband's contention, the record supports the conclusion that he wastefully dissipated at least $285,000 in assets by choosing to abandon several business ventures, including Multi, Inc. (*see* Domestic Relations Law § 236 [B] [5] [d] [12]; *Kerley v Kerley*, 131 AD3d 1124, 1126 [2015]; *Owens v Owens*, 107 AD3d 1171, 1175-1176 [2013]; *Altieri v Altieri*, 35 AD3d 1093, 1095-1096 [2006]). The husband's contentions to the contrary primarily implicate the credibility determinations of the Referee, which again we decline to disturb.

The husband also challenges the wife's seven-year postdivorce maintenance award of $3,000 per month, which was effective September 1, 2014. He argues that the Supreme Court had already ordered him to pay, pursuant to a pendente lite order, $3,000 per month in temporary maintenance retroactive to November 12, 2010, the date on which the wife filed her complaint seeking a divorce, wherein she requested maintenance. The husband contends that this effectively granted the wife an 11-year maintenance award, which is excessive in duration given that the marriage lasted only 12 years and the parties had no children together. We disagree.

"A party's maintenance obligation is retroactive to the date the application for maintenance was first made (*see* Domestic Relations Law § 236 [B] [6] [a]). However, the party is also entitled to a credit for any amount of temporary maintenance . . . already paid" (*Huffman v Huffman*, 84 AD3d 875, 876 [2011]). Here, in arguing that the maintenance award is out of proportion to the duration of the marriage, the husband fails to recognize that, pursuant to the version of Domestic Relations Law § 236 (B) (6) (a) in effect at the time of the commencement of this action, one of the factors a court should take into account in deciding the amount and duration of a maintenance award is "the existence and duration of a pre-marital joint household" (Domestic Relations Law § 236 [B] [6] [a] [6]). The wife testified that the couple lived together from 1984 to 2010, approximately 26 years. Thus, an 11-year award of maintenance is not out of proportion with the duration of the joint household.

" 'The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting' " (*Groesbeck v Groesbeck*, 51

AD3d 722, 723 [2008], quoting *Sirgant v Sirgant*, 43 AD3d 1034, 1035 [2007]). "The amount and duration of spousal maintenance is committed to the sound discretion of the trial court, and each case is to be decided on its own unique facts" (*Diwan v Diwan*, 135 AD3d 807, 809 [2016]; *see Lamparillo v Lamparillo*, 130 AD3d 580, 581 [2015]; *Heydt-Benjamin v Heydt-Benjamin*, 127 AD3d 814, 815 [2015]). The maintenance award was appropriate for the wife to become self-supporting given the factors involved, including the duration of the pre-marital joint household, as well as the wife's age, absence from the workforce, reduced earning capacity, and limited education (*see* Domestic Relations Law § 236 [B] [6] [a]).

The husband's contention that the Referee improperly imputed income to him in the amount of $200,000 in determining his maintenance obligation also is without merit. In determining a party's maintenance obligation, a court is not required to rely upon the party's own account of his or her finances (*see Peri v Peri*, 2 AD3d 425 [2003]). "A court is justified in imputing income to a spouse when it is shown that the marital lifestyle was such that, under the circumstances, there was a basis for the court to conclude that the spouse's actual income and financial resources were greater than what he or she reported on his or her tax returns" (*Weitzner v Weitzner*, 120 AD3d 1406, 1407 [2014]; *see Hoenig v Hoenig*, 245 AD2d 262, 263 [1997]). Here, the evidence presented at the hearing regarding the marital lifestyle was such that the Referee had a basis to conclude that the husband's actual income and resources were greater than reported.

The award of $125,000 in counsel fees to the wife was a provident exercise of discretion in light of, inter alia, the financial circumstances of the parties, the relative merits of their positions, and the tactics of the husband in unnecessarily prolonging and complicating this litigation (*see* Domestic Relations Law § 237; *Black v Black*, 140 AD3d 816, 816-817 [2016]; *Mizrahi-Srour v Srour*, 138 AD3d 801, 803 [2016]).

The appellants' remaining contentions are without merit. Dillon, J.P., Dickerson, Maltese and Duffy, JJ., concur.